United States District Court
Southern District of Texas

**ENTERED**

October 14, 2016

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JESSICA HERRERA, individually and on behalf of all others similarly situated, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. H-14-2986 |
| JK & HE BUSINESS, LLC d/b/a JOY OF HOUSTON and HOSSEIN M. ESHTEHARDI, individually | § § § § | |
| Defendants. | § | |

## <u>MEMORANDUM OPINION</u>

Pending before the court[1] is Plaintiffs' Motion for Partial Summary Judgment (Doc. 36). The court has considered Plaintiffs' Partial Motion for Summary Judgment (Doc. 36), Defendants' response (Doc. 39), all other relevant filings, and the applicable law. For the reasons set forth below, the court **GRANTS in part and DENIES in part** Plaintiffs' Motion for Partial Summary Judgment.

## I.  Case Background

Plaintiff filed this action against Defendants under the Fair Labor Standards Act ("FLSA"),[2] alleging that Defendants failed to pay their nonexempt employees at the federally mandated overtime

---

[1] The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  <u>See</u> Doc. 27, Ord. Dated June 10, 2015.

[2] <u>See</u> 29 U.S.C. §§ 201-219.

and minimum wage rates.[3]

## A.   **Factual Background**

Plaintiffs are ten dancers who worked for Defendant JK & HE, LLC d/b/a Joy of Houston ("JK & HE").[4]  Defendant Hossein M. Eshtehardi ("Eshtehardi") is a supervisor at Joy of Houston ("Joy").[5]  Joy is an adult entertainment club operated by Defendants.[6]  Plaintiffs' jobs were to dance for customers and they were not paid by Defendants for their work.[7]  Plaintiffs' income came solely from tips from customers.[8]  Defendants provided the

---

[3]     See Doc. 1, Pls.' Compl.

[4]     See Doc. 36, Pls.' Mot. for Summ. J., p. 1 & n. 1; Doc. 36-1, Ex. A to Pls.' Mot. for Summ. J., Decl. of Jessica Herrera ¶ 2; Doc. 36-2, Ex. B to Pls.' Mot. for Summ. J., Decl. of Stephanie Haines ¶ 2; Doc. 36-3, Ex. C to Pls.' Mot. for Summ. J., Decl. of Kei Erika Vanduren ¶ 2; Doc. 36-4, Ex. D to Pls.' Mot. for Summ. J, Decl. of Joann Garcia ¶ 2; Doc. 36-5, Ex. E to Pls.' Mot. for Summ. J, Decl. of Jessica Gibbs ¶ 2.

[5]     See Doc. 11, Def. Eshtehardi's Ans. ¶¶ 20, 23.

[6]     See Doc. 10, Def. JK & HE's Ans. ¶ 23 ("Defendant admits it operated an adult entertainment club in Houston, Texas under the name Joy of Houston."); Doc. 11, Def. Eshtehardi's Ans. ¶ 23 (same).

[7]     See Doc. 10, Def. JK & HE's Ans. ¶ 2 ("Defendant admits that Plaintiff's only compensation for work performed at Joy of Houston came from fees from patrons."); Doc. 11, Def. Eshtehardi's Ans. ¶ 2 (same); Doc. 36-1, Ex. A to Pls.' Mot. for Summ. J., Decl. of Jessica Herrera ¶¶ 2, 28; Doc. 36-2, Ex. B to Pls.' Mot. for Summ. J., Decl. of Stephanie Haines ¶¶ 2, 26; Doc. 36-3, Ex. C to Pls.' Mot. for Summ. J., Decl. of Kei Erika Vanduren ¶¶ 2, 26; Doc. 36-4, Ex. D to Pls.' Mot. for Summ. J, Decl. of Joann Garcia ¶¶ 2, 27; Doc. 36-5, Ex. E to Pls.' Mot. for Summ. J, Decl. of Jessica Gibbs ¶¶ 2, 27.

[8]     See Doc. 10, Def. JK & HE's Ans. ¶ 2; Doc. 11, Def. Eshtehardi's Ans. ¶ 2; Doc. 36-1, Ex. A to Pls.' Mot. for Summ. J., Decl. of Jessica Herrera ¶¶ 2, 28; Doc. 36-2, Ex. B to Pls.' Mot. for Summ. J., Decl. of Stephanie Haines ¶¶ 2, 26; Doc. 36-3, Ex. C to Pls.' Mot. for Summ. J., Decl. of Kei Erika Vanduren ¶¶ 2, 26; Doc. 36-4, Ex. D to Pls.' Mot. for Summ. J, Decl. of Joann Garcia ¶¶ 2, 27; Doc. 36-5, Ex. E to Pls.' Mot. for Summ. J, Decl. of Jessica Gibbs ¶¶ 2, 27.

venue, equipment, and the stage for Plaintiffs' performances.[9] Defendants classified Plaintiffs as independent contractors.[10]

Other than these agreed upon facts, Plaintiffs and Defendants each provide their own version of the facts for how the club was operated and how the dancers were treated.  The court will first discuss Plaintiffs' summary judgment evidence, and then turn to Defendants' summary judgment evidence.

### 1.  Plaintiffs' Facts

Plaintiffs attached five declarations from dancers in support of their motion for partial summary judgment.  In these declarations, Plaintiffs averred to the following facts.

Although Defendants considered Plaintiffs independent contractors, Plaintiffs averred that they were "discouraged" from working at clubs other than Joy.[11]  Additionally, Defendants had

---

[9]      See Doc. 10, Def. Joy's Ans. ¶ 39b.; Doc. 11, Def. Eshtehardi's Ans. ¶ 39b. (same).

[10]     See Doc. 36-1, Ex. A to Pls.' Mot. for Summ. J., Decl. of Jessica Herrera ¶¶ 3, 18; Doc. 36-2, Ex. B to Pls.' Mot. for Summ. J., Decl. of Stephanie Haines ¶¶ 3, 16; Doc. 36-3, Ex. C to Pls.' Mot. for Summ. J., Decl. of Kei Erika Vanduren ¶¶ 3, 16; Doc. 36-4, Ex. D to Pls.' Mot. for Summ. J, Decl. of Joann Garcia ¶¶ 3, 17; Doc. 36-5, Ex. E to Pls.' Mot. for Summ. J, Decl. of Jessica Gibbs ¶¶ 3, 17; Doc. 39-1, Ex. A to Defs.' Resp., Decl. of Rosa Salas ¶ 3; Doc. 39-2, Ex. B to Defs.' Resp., Decl. of Kirsten Riggs ¶ 3; Doc. 39-3, Ex. C to Defs.' Resp., Decl. of Sarah Gutierrez ¶ 3; Doc. 39-4, Ex. C to Defs.' Resp., Decl. of Phillip M. Dickey ¶ 2; Doc. 39-5, Ex. D to Defs.' Resp., Decl. of David Homeyer ¶ 2.

[11]     See Doc. 36-1, Ex. A to Pls.' Mot. for Summ. J., Decl. of Jessica Herrera ¶¶ 3, 18 ("I was discouraged from working at other adult entertainment clubs."); Doc. 36-2, Ex. B to Pls.' Mot. for Summ. J., Decl. of Stephanie Haines ¶¶ 3, 16 (same); Doc. 36-3, Ex. C to Pls.' Mot. for Summ. J., Decl. of Kei Erika Vanduren ¶¶ 3, 16 (same); Doc. 36-4, Ex. D to Pls.' Mot. for Summ. J, Decl. of Joann Garcia ¶¶ 3, 17 (same); Doc. 36-5, Ex. E to Pls.' Mot. for Summ. J, Decl. of Jessica Gibbs ¶¶ 3, 17 (same).

"control over all advertising and marketing, dance prices, dancer hiring, music selection, club layout, lighting, hiring of wait staff, security and other employees who interact with customers, club hours, club amenities and cleanliness, cover charges and overall club atmosphere."[12]

Plaintiffs were required to pay a "house fee" when they came to work, and that the fee increased the later they arrived.[13] Additionally, Defendants required Plaintiffs to pay a fee if they left the club before the end of their shift.[14] Plaintiffs had to share any tips received with employees at the club, such as the disc jockey.[15] Defendants specified the price that Plaintiffs could

---

[12]     Doc. 36-1, Ex. A to Pls.' Mot. for Summ. J., Decl. of Jessica Herrera ¶ 3; Doc. 36-2, Ex. B to Pls.' Mot. for Summ. J., Decl. of Stephanie Haines ¶ 3; Doc. 36-3, Ex. C to Pls.' Mot. for Summ. J., Decl. of Kei Erika Vanduren ¶ 3; Doc. 36-4, Ex. D to Pls.' Mot. for Summ. J, Decl. of Joann Garcia ¶ 3; Doc. 36-5, Ex. E to Pls.' Mot. for Summ. J, Decl. of Jessica Gibbs ¶ 3.

[13]     See Doc. 36-1, Ex. A to Pls.' Mot. for Summ. J., Decl. of Jessica Herrera ¶ 4 ("As soon as I arrive at Joy, I have to check in and pay a house fee which depends on the time I arrive.  The amount of house fee is determined by the club.  The later a dancer arrives, the higher the house fee."); Doc. 36-2, Ex. B to Pls.' Mot. for Summ. J., Decl. of Stephanie Haines ¶ 4 (same); Doc. 36-3, Ex. C to Pls.' Mot. for Summ. J., Decl. of Kei Erika Vanduren ¶ 4 (same); Doc. 36-4, Ex. D to Pls.' Mot. for Summ. J, Decl. of Joann Garcia ¶ 4 (same); Doc. 36-5, Ex. E to Pls.' Mot. for Summ. J, Decl. of Jessica Gibbs ¶ 4 (same).

[14]     See Doc. 36-1, Ex. A to Pls.' Mot. for Summ. J., Decl. of Jessica Herrera ¶ 2; Doc. 36-2, Ex. B to Pls.' Mot. for Summ. J., Decl. of Stephanie Haines ¶ 2; Doc. 36-3, Ex. C to Pls.' Mot. for Summ. J., Decl. of Kei Erika Vanduren ¶ 2; Doc. 36-4, Ex. D to Pls.' Mot. for Summ. J, Decl. of Joann Garcia ¶ 2; Doc. 36-5, Ex. E to Pls.' Mot. for Summ. J, Decl. of Jessica Gibbs ¶ 2.

[15]     See Doc. 36-1, Ex. A to Pls.' Mot. for Summ. J., Decl. of Jessica Herrera ¶ 2; Doc. 36-2, Ex. B to Pls.' Mot. for Summ. J., Decl. of Stephanie Haines ¶ 2; Doc. 36-3, Ex. C to Pls.' Mot. for Summ. J., Decl. of Kei Erika Vanduren ¶ 2; Doc. 36-4, Ex. D to Pls.' Mot. for Summ. J, Decl. of Joann Garcia ¶ 2; Doc. 36-5, Ex. E to Pls.' Mot. for Summ. J, Decl. of Jessica Gibbs ¶ 2.

charge customers for table dances and the VIP room.[16]   Customers could pay the manager a fee and hire a dancer for a whole night.[17]

Defendants set requirements for Plaintiffs' attire.[18] Defendants controlled the music and required that dancers perform on stage for a certain number of songs.[19]   Additionally, Plaintiffs were not allowed to eat, drink, chew gum, or smoke while dancing.[20] Plaintiffs could not sell alcohol to patrons of the establishment.[21]

Plaintiffs did not invest financially in the club themselves.[22]

---

[16]   See Doc. 36-1, Ex. A to Pls.' Mot. for Summ. J., Decl. of Jessica Herrera ¶ 8; Doc. 36-2, Ex. B to Pls.' Mot. for Summ. J., Decl. of Stephanie Haines ¶ 6; Doc. 36-3, Ex. C to Pls.' Mot. for Summ. J., Decl. of Kei Erika Vanduren ¶ 6; Doc. 36-4, Ex. D to Pls.' Mot. for Summ. J, Decl. of Joann Garcia ¶ 7; Doc. 36-5, Ex. E to Pls.' Mot. for Summ. J, Decl. of Jessica Gibbs ¶ 7.

[17]   See Doc. 36-1, Ex. A to Pls.' Mot. for Summ. J., Decl. of Jessica Herrera ¶ 6.

[18]   See Doc. 36-1, Ex. A to Pls.' Mot. for Summ. J., Decl. of Jessica Herrera ¶¶ 7, 8; Doc. 36-2, Ex. B to Pls.' Mot. for Summ. J., Decl. of Stephanie Haines ¶ 6; Doc. 36-3, Ex. C to Pls.' Mot. for Summ. J., Decl. of Kei Erika Vanduren ¶ 6; Doc. 36-4, Ex. D to Pls.' Mot. for Summ. J, Decl. of Joann Garcia ¶ 7; Doc. 36-5, Ex. E to Pls.' Mot. for Summ. J, Decl. of Jessica Gibbs ¶ 7.

[19]   See Doc. 36-1, Ex. A to Pls.' Mot. for Summ. J., Decl. of Jessica Herrera ¶ 8; Doc. 36-2, Ex. B to Pls.' Mot. for Summ. J., Decl. of Stephanie Haines ¶ 6; Doc. 36-3, Ex. C to Pls.' Mot. for Summ. J., Decl. of Kei Erika Vanduren ¶ 6; Doc. 36-4, Ex. D to Pls.' Mot. for Summ. J, Decl. of Joann Garcia ¶ 7; Doc. 36-5, Ex. E to Pls.' Mot. for Summ. J, Decl. of Jessica Gibbs ¶ 7.

[20]   See Doc. 36-1, Ex. A to Pls.' Mot. for Summ. J., Decl. of Jessica Herrera ¶ 8; Doc. 36-2, Ex. B to Pls.' Mot. for Summ. J., Decl. of Stephanie Haines ¶ 6; Doc. 36-3, Ex. C to Pls.' Mot. for Summ. J., Decl. of Kei Erika Vanduren ¶ 6; Doc. 36-4, Ex. D to Pls.' Mot. for Summ. J, Decl. of Joann Garcia ¶ 7; Doc. 36-5, Ex. E to Pls.' Mot. for Summ. J, Decl. of Jessica Gibbs ¶ 7.

[21]   See Doc. 36-1, Ex. A to Pls.' Mot. for Summ. J., Decl. of Jessica Herrera ¶ 8; Doc. 36-2, Ex. B to Pls.' Mot. for Summ. J., Decl. of Stephanie Haines ¶ 6; Doc. 36-3, Ex. C to Pls.' Mot. for Summ. J., Decl. of Kei Erika Vanduren ¶ 6; Doc. 36-4, Ex. D to Pls.' Mot. for Summ. J, Decl. of Joann Garcia ¶ 7; Doc. 36-5, Ex. E to Pls.' Mot. for Summ. J, Decl. of Jessica Gibbs ¶ 7.

[22]   See Doc. 36-1, Ex. A to Pls.' Mot. for Summ. J., Decl. of Jessica Herrera ¶ 25; Doc. 36-2, Ex. B to Pls.' Mot. for Summ. J., Decl. of Stephanie Haines ¶ 23; Doc. 36-3, Ex. C to Pls.' Mot. for Summ. J., Decl. of Kei Erika Vanduren ¶ 23; Doc. 36-4, Ex. D to Pls.' Mot. for Summ. J, Decl. of Joann Garcia

Additionally, Plaintiffs did not provide feedback on what food or alcohol to serve, or on the type of advertising, marketing, promotional events, or memberships the club should have.[23] The majority of dancers did not did not have regular customers who came to the club specifically to see them.[24] Plaintiffs averred that they relied on the club to attract patrons.[25]

Plaintiffs and most entertainers at Joy were not formally trained in dance.[26] Plaintiffs aver that management at Joy would give them any "necessary" training, but the managers did not train them in dance, as they did not have such expertise.[27] The skills

¶ 24; Doc. 36-5, Ex. E to Pls.' Mot. for Summ. J, Decl. of Jessica Gibbs ¶ 24.

[23]    See Doc. 36-1, Ex. A to Pls.' Mot. for Summ. J., Decl. of Jessica Herrera ¶ 25-26; Doc. 36-2, Ex. B to Pls.' Mot. for Summ. J., Decl. of Stephanie Haines ¶ 23-24; Doc. 36-3, Ex. C to Pls.' Mot. for Summ. J., Decl. of Kei Erika Vanduren ¶ 23-24; Doc. 36-4, Ex. D to Pls.' Mot. for Summ. J, Decl. of Joann Garcia ¶ 24-25; Doc. 36-5, Ex. E to Pls.' Mot. for Summ. J, Decl. of Jessica Gibbs ¶ 24-25.

[24]    See Doc. 36-1, Ex. A to Pls.' Mot. for Summ. J., Decl. of Jessica Herrera ¶ 14; Doc. 36-2, Ex. B to Pls.' Mot. for Summ. J., Decl. of Stephanie Haines ¶ 12; Doc. 36-3, Ex. C to Pls.' Mot. for Summ. J., Decl. of Kei Erika Vanduren ¶ 12; Doc. 36-4, Ex. D to Pls.' Mot. for Summ. J, Decl. of Joann Garcia ¶ 13; Doc. 36-5, Ex. E to Pls.' Mot. for Summ. J, Decl. of Jessica Gibbs ¶ 13.

[25]    See  Doc. 36-1, Ex. A to Pls.' Mot. for Summ. J., Decl. of Jessica Herrera ¶ 5; Doc. 36-2, Ex. B to Pls.' Mot. for Summ. J., Decl. of Stephanie Haines ¶ 5; Doc. 36-3, Ex. C to Pls.' Mot. for Summ. J., Decl. of Kei Erika Vanduren ¶ 5; Doc. 36-4, Ex. D to Pls.' Mot. for Summ. J, Decl. of Joann Garcia ¶ 5; Doc. 36-5, Ex. E to Pls.' Mot. for Summ. J, Decl. of Jessica Gibbs ¶ 5.

[26]    See Doc. 36-1, Ex. A to Pls.' Mot. for Summ. J., Decl. of Jessica Herrera ¶ 19; Doc. 36-2, Ex. B to Pls.' Mot. for Summ. J., Decl. of Stephanie Haines ¶ 17; Doc. 36-3, Ex. C to Pls.' Mot. for Summ. J., Decl. of Kei Erika Vanduren ¶ 17; Doc. 36-4, Ex. D to Pls.' Mot. for Summ. J, Decl. of Joann Garcia ¶ 18; Doc. 36-5, Ex. E to Pls.' Mot. for Summ. J, Decl. of Jessica Gibbs ¶ 18.

[27]    See Doc. 36-1, Ex. A to Pls.' Mot. for Summ. J., Decl. of Jessica Herrera ¶ 19; Doc. 36-2, Ex. B to Pls.' Mot. for Summ. J., Decl. of Stephanie Haines ¶ 17; Doc. 36-3, Ex. C to Pls.' Mot. for Summ. J., Decl. of Kei Erika Vanduren ¶ 17; Doc. 36-4, Ex. D to Pls.' Mot. for Summ. J, Decl. of Joann Garcia ¶ 18; Doc. 36-5, Ex. E to Pls.' Mot. for Summ. J, Decl. of Jessica Gibbs ¶ 18.

required to work as a dancer at Joy were those "that an ordinary person of reasonable fitness and coordination would have."[28] Plaintiffs averred that appearance mattered more than dancing skills when it came to making money at Joy, but that, ultimately, the club had significant control over how much money they could earn.[29]

### 2. Defendants' Facts

Defendants also submitted five declarations with their response to Plaintiffs' motion for summary judgment. Three of these declarations were from dancers and two were from managers who worked for Joy.

These declarations stated that the dancers were able to perform at other clubs at their discretion.[30] Also, the dancers had control over their schedules and could choose what days and times

---

[28]     Doc. 36-1, Ex. A to Pls.' Mot. for Summ. J., Decl. of Jessica Herrera ¶ 20; Doc. 36-2, Ex. B to Pls.' Mot. for Summ. J., Decl. of Stephanie Haines ¶ 18; Doc. 36-3, Ex. C to Pls.' Mot. for Summ. J., Decl. of Kei Erika Vanduren ¶ 18; Doc. 36-4, Ex. D to Pls.' Mot. for Summ. J, Decl. of Joann Garcia ¶ 19; Doc. 36-5, Ex. E to Pls.' Mot. for Summ. J, Decl. of Jessica Gibbs ¶ 19.

[29]     See Doc. 36-1, Ex. A to Pls.' Mot. for Summ. J., Decl. of Jessica Herrera ¶ 21; Doc. 36-2, Ex. B to Pls.' Mot. for Summ. J., Decl. of Stephanie Haines ¶ 19; Doc. 36-3, Ex. C to Pls.' Mot. for Summ. J., Decl. of Kei Erika Vanduren ¶ 19; Doc. 36-4, Ex. D to Pls.' Mot. for Summ. J, Decl. of Joann Garcia ¶ 20; Doc. 36-5, Ex. E to Pls.' Mot. for Summ. J, Decl. of Jessica Gibbs ¶ 20.

[30]     See Doc. Doc. 39-1, Ex. A to Defs.' Resp., Decl. of Rosa Salas ¶ 3(d); Doc. 39-2, Ex. B to Defs.' Resp., Decl. of Kirsten Riggs ¶ 3(e); Doc. 39-3, Ex. C to Defs.' Resp., Decl. of Sarah Gutierrez ¶ 3(d); Doc. 39-4, Ex. C to Defs.' Resp., Decl. of Phillip M. Dickey ¶ 2(a); Doc. 39-5, Ex. D to Defs.' Resp., Decl. of David Homeyer ¶ 2(a).

they wanted to work.[31]   The dancers who submitted declarations for Defendants averred that they chose to be dancers because they were able to earn more money and have more control over their schedules then they would at a traditional job.[32]

The dancers set their own fees for dances and decided how long to dance for customers.[33]   Dancers were told they could, but did not have to, pay a license fee to the club to perform.[34]   There was no requirement that dancers share their tips with employees at Joy.[35] The managers of the club did not arrange customers for the dancers for the evening.[36]   Most of the dancers had repeat customers who

---

[31]   See Doc. 39-1, Ex. A to Defs.' Resp., Decl. of Rosa Salas ¶ 3(a); Doc. 39-2, Ex. B to Defs.' Resp., Decl. of Kirsten Riggs ¶ 3(b); Doc. 39-3, Ex. C to Defs.' Resp., Decl. of Sarah Gutierrez ¶ 3(a);  Doc. 39-4, Ex. C to Defs.' Resp., Decl. of Phillip M. Dickey ¶ 2(a); Doc. 39-5, Ex. D to Defs.' Resp., Decl. of David Homeyer ¶ 2(a).

[32]   See Doc. 39-1, Ex. A to Defs.' Resp., Decl. of Rosa Salas ¶ 3(e); Doc. 39-2, Ex. B to Defs.' Resp., Decl. of Kirsten Riggs ¶ 3(f); Doc. 39-3, Ex. C to Defs.' Resp., Decl. of Sarah Gutierrez ¶ 3(e).

[33]   See Doc. 39-1, Ex. A to Defs.' Resp., Decl. of Rosa Salas ¶ 3(c); Doc. 39-2, Ex. B to Defs.' Resp., Decl. of Kirsten Riggs ¶ 3(d); Doc. 39-3, Ex. C to Defs.' Resp., Decl. of Sarah Gutierrez ¶ 3(c); Doc. 39-4, Ex. C to Defs.' Resp., Decl. of Phillip M. Dickey ¶ 2(c); Doc. 39-5, Ex. D to Defs.' Resp., Decl. of David Homeyer ¶ 2(c).

[34]   See Doc. Doc. 39-1, Ex. A to Defs.' Resp., Decl. of Rosa Salas ¶ 3(d)("While payment by the dancers of floor fees or licensee fees in exchange for the right to provide dancing or entertainment services is encouraged, it is not a precondition to entering the club and providing those services."); Doc. 39-2, Ex. B to Defs.' Resp., Decl. of Kirsten Riggs ¶ 3(e)(same); Doc. 39-3, Ex. C to Defs.' Resp., Decl. of Sarah Gutierrez ¶ 3(d)(same).

[35]   See Doc. 39-1, Ex. A to Defs.' Resp., Decl. of Rosa Salas ¶ 3(h); Doc. 39-2, Ex. B to Defs.' Resp., Decl. of Kirsten Riggs ¶ 3(i); Doc. 39-3, Ex. C to Defs.' Resp., Decl. of Sarah Gutierrez ¶ 3(h); Doc. 39-4, Ex. C to Defs.' Resp., Decl. of Phillip M. Dickey ¶ 2(g); Doc. 39-5, Ex. D to Defs.' Resp., Decl. of David Homeyer ¶ 2(g).

[36]   See Doc. 39-1, Ex. A to Defs.' Resp., Decl. of Rosa Salas ¶ 3(b); Doc. 39-2, Ex. B to Defs.' Resp., Decl. of Kirsten Riggs ¶ 3(c); Doc. 39-3, Ex. C to Defs.' Resp., Decl. of Sarah Gutierrez ¶ 3(b); Doc. 39-4, Ex. C to Defs.'

came to the club to see them.[37]  The dancers took responsibility for advertising their services by contacting customers by phone or social media.[38]

The dancers were not required wear certain attire and they supplied their own.[39]  There was no policy at the club against the dancers eating, drinking, smoking, or chewing gum.[40]  The dancers were not required to dance on stage, and, if they did dance on stage, they were not required to stay on stage for a any amount of time and could choose their own music.[41]  Dancers did not receive

---

Resp., Decl. of Phillip M. Dickey ¶ 2(b); Doc. 39-5, Ex. D to Defs.' Resp., Decl. of David Homeyer ¶ 2(b).

[37]  See Doc. 39-1, Ex. A to Defs.' Resp., Decl. of Rosa Salas ¶ 3(b); Doc. 39-2, Ex. B to Defs.' Resp., Decl. of Kirsten Riggs ¶ 3(c); Doc. 39-3, Ex. C to Defs.' Resp., Decl. of Sarah Gutierrez ¶ 3(b); Doc. 39-4, Ex. C to Defs.' Resp., Decl. of Phillip M. Dickey ¶ 2(b); Doc. 39-5, Ex. D to Defs.' Resp., Decl. of David Homeyer ¶ 2(b).

[38]  See Doc. 39-1, Ex. A to Defs.' Resp., Decl. of Rosa Salas ¶ 3(f); Doc. 39-2, Ex. B to Defs.' Resp., Decl. of Kirsten Riggs ¶ 3(g); Doc. 39-3, Ex. C to Defs.' Resp., Decl. of Sarah Gutierrez ¶ 3(f).

[39]  See Doc. 39-1, Ex. A to Defs.' Resp., Decl. of Rosa Salas ¶ 3(d); Doc. 39-2, Ex. B to Defs.' Resp., Decl. of Kirsten Riggs ¶ 3(e); Doc. 39-3, Ex. C to Defs.' Resp. to Pls.' Mot. for Summ. J., Decl. of Sarah Gutierrez ¶ 3(d); Doc. 39-4, Ex. C to Defs.' Resp., Decl. of Phillip M. Dickey ¶ 2(d); Doc. 39-5, Ex. D to Defs.' Resp., Decl. of David Homeyer ¶ 2(d).

[40]  See Doc. 39-1, Ex. A to Defs.' Resp., Decl. of Rosa Salas ¶ 3(i); Doc. 39-2, Ex. B to Defs.' Resp., Decl. of Kirsten Riggs ¶ 3(j); Doc. 39-3, Ex. C to Defs.' Resp., Decl. of Sarah Gutierrez ¶ 3(i); Doc. 39-4, Ex. C to Defs.' Resp., Decl. of Phillip M. Dickey ¶ 2(h); Doc. 39-5, Ex. D to Defs.' Resp., Decl. of David Homeyer ¶ 2(h).

[41]  See Doc. 39-1, Ex. A to Defs.' Resp., Decl. of Rosa Salas ¶ 3(g); Doc. 39-2, Ex. B to Defs.' Resp, Decl. of Kirsten Riggs ¶ 3(h); Doc. 39-3, Ex. C to Defs.' Resp., Decl. of Sarah Gutierrez ¶ 3(g); Doc. 39-4, Ex. C to Defs.' Resp., Decl. of Phillip M. Dickey ¶ 2(f); Doc. 39-5, Ex. D to Defs.' Resp., Decl. of David Homeyer ¶ 2(f).

any training from the club.[42]  The dancers averred that dancing at the club required above average skills and that their earning potential was based on their skills and ability to attract customers and maintain those relationships.[43]

## B.  <u>Procedural Background</u>

Plaintiffs filed this action on October 20, 2015, alleging willful violations of the FLSA.[44]  Defendants filed their answers on November 21, 2014, and November 24, 2014.[45]  Plaintiffs filed a motion to certify class on March 9, 2015, which was followed by a response by Defendant on March 30, 2015, and a reply by Plaintiff on April 10, 2015.[46]  Additionally, Defendant JK & HE made a motion for leave to file a counterclaim on April 10, 2015.[47]  Plaintiffs responded to this motion for leave to file a counterclaim on May 1, 2015, and Defendants JK & HE replied on May 11, 2015.[48]

On June 22, 2015, the court issued a memorandum opinion and

---

[42]     <u>See</u> Doc. 39-1, Ex. A to Defs.' Resp., Decl. of Rosa Salas ¶ 3(f); Doc. 39-2, Ex. B to Defs.' Resp., Decl. of Kirsten Riggs ¶ 3(g); Doc. 39-3, Ex. C to Defs.' Resp., Decl. of Sarah Gutierrez ¶ 3(f).

[43]     <u>See</u> Doc. 39-1, Ex. A to Defs.' Resp., Decl. of Rosa Salas ¶ 3(f); Doc. 39-2, Ex. B to Defs.' Resp., Decl. of Kirsten Riggs ¶ 3(g); Doc. 39-3, Ex. C to Defs.' Resp., Decl. of Sarah Gutierrez ¶ 3(f).

[44]     <u>See</u> Doc. 1, Pls.' Compl.

[45]     <u>See</u> Doc. 10, Def. JK & HE's Ans.; Doc. 11, Def. Eshtehardi's Ans.

[46]     <u>See</u> Doc. 17, Pls.' Mot. to Certify Class; Doc. 18., Defs.' Resp. to Pls.' Mot. to Certify Class; Doc. 21, Pls.' Reply to Defs.' Resp. to Pls.' Mot. to Certify Class.

[47]     <u>See</u> Doc. 20, Defs.' Mot. for Leave to File Orig. Counterclaim

[48]     <u>See</u> Doc. 25, Defs.' Reply to Pls.'s Resp. to Defs.' Mot. for Leave to File a Counterclaim.

order, granting the motion to certify the class and denying Defendants' motion for leave to file a counterclaim.[49]  After this was issued, additional Plaintiffs joined the class by filing their consents.[50]

Plaintiffs filed this motion for partial summary judgment on March 22, 2016.[51]  Defendants responded on May 6, 2016.[52]  The parties filed joint motions to extend the deadlines in the case on April 1, 2016 and August 1, 2016.[53]

## II.  Legal Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists on any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Stauffer v. Gearhart, 741 F.3d 574, 581 (5th Cir. 2014).  A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001).  To be genuine,

---

[49]    See Doc. 28, Mem. Op. & Ord. Dated June 22, 2015.

[50]    See Doc. 29, Pls.' Notice of Filing Consent; Doc. 30, Pls.' Notice of Filing of Consent Forms; Doc. 31, Pls.' Notice of Filing Consents; Doc. 32, Pls.' Notice of Filing Consent; Doc. 33, Pls.' Notice of Filing Consents.

[51]    See Doc. 36, Pls.' Mot. for Summ. J.

[52]    See Doc. 39, Defs.' Resp. to Pls.' Mot. for Summ. J.

[53]    See Doc. 37, Joint Mot. for Extension of Time Pretrial Deadlines Dated Apr. 1, 2016; Doc. 42, Joint Mot. for Extension of Time Pretrial Deadlines Dated Aug. 1, 2016.

the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of the nonmoving party.  See Royal v. CCC & R Tres Arboles, L.L.C., 736 F.3d 396, 400 (5th Cir. 2013)(quoting Anderson, 477 U.S. at 248).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues.  Fed. R. Civ. Pro. 56(c); Celotex Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992).  If the moving party carries its burden, the nonmovant may not rest on the allegations or denials in his pleading but must respond with evidence showing a genuine factual dispute.  Stauffer v. Gearhart, 741 F.3d 574, 581 (citing Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007)).

### III. Analysis

Plaintiffs have moved for partial summary judgment on three different issues, arguing that they are employees, not independent contractors, that Defendant Eshtehardi is an employer, and that Defendants have not met their burden on their affirmative defenses. The court will address each argument in turn.

### A.  Employees or Independent Contractors

The FLSA requires covered employers to pay non-exempt employees for hours worked in excess of defined maximum hours.  See 29 U.S.C. § 207(a)(1) (requiring that covered employers pay

12

employees at least one-and-a-half times the regular rate for hours worked in excess of forty hours per week).  It allows employees to bring an action against their employers for violation of its hour and wage provisions.  See 29 U.S.C. §§ 215-216.

The determination of whether Plaintiffs are employees under the FLSA is a legal finding, not a factual finding.  See Lindsley v. BellSouth Telecomms. Inc., No. 09-30699, 2010 WL 4609109, at *1 (5th Cir. Nov. 15, 2010) (unpublished) (citing Brock v. Mr. W Fireworks, Inc., 814 F.2d 1042, 1045 (5th Cir. 1987)).  The "focal inquiry in determining employee status is whether the individual is, as a matter of economic reality, in business for herself." Reich v. Circle C. Invs., Inc., 998 F.2d 324, 327 (5th Cir. 1993)(citing Donovan v. Tehco, 642 F.2d 141, 143 (5th Cir. 1981)).

To help determine the extent of a worker's dependency under this economic reality test, courts in the Fifth Circuit look to the following five factors: (1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and alleged employer; (3) the degree to which the worker's opportunity for profit and loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship.  Reich, 998 F.2d at 327.  No individual factor can determine whether someone is an independent contractor or employee on its own.  Id. (citing Mr. W Fireworks, 814 F.2d 1042, 1054 (5th Cir. 1987).  The outcome of this

13

analysis depends on the specific facts of the case. <u>Thibault v.</u>
<u>Bellsouth Telecomms., Inc.</u>, 612 F.3d 843, 848 (5th Cir. 2010)("[t]he
determination of whether an individual is an employee or
independent contractor is highly dependent on the particular
situation presented.").

Plaintiffs assert in their motion for partial summary judgment
that they are employees of Defendants, not independent contractors.
Defendants respond that Plaintiffs should not be considered
employees. Defendants contend that the Plaintiffs have not shown
that Defendants had enough control over them to win this issue at
the summary judgment stage.

Looking at the record, the evidence supplied by Plaintiffs and
Defendants conflicts on many key issues including the following:
who dictated Plaintiffs' attire, the music, and the fees charged
for dances; whether and to what extent Plaintiffs had to perform on
stage; whether Plaintiffs had to pay a fee if they left their shift
early; whether the fee Plaintiffs paid to perform at Joy was
mandatory; whether Plaintiffs received any dance or other training
from Joy; whether the managers set up patrons with dancers for the
night; whether Plaintiffs had regular customers that they brought
into the club or if they relied on the club for customers; and
whether Plaintiffs had to share tips with employees of Joy.

The conflicting evidence provided by Plaintiffs and Defendants
prevents the court from granting partial summary judgment on this

the issue of whether Plaintiffs are employees or independent contracts, as the conflicts demonstrate that there are still disputes of genuine material fact.  These conflicting facts go to the heart of whether or not Defendants had control over the work activities of Plaintiffs, which is essential in deciding whether Plaintiffs were independent contractors or employees.  Therefore, the court denies partial summary judgment on the issue of whether or not Plaintiffs were employees or independent contractors.

## B.  Defendant Eshtehardi

Under the FLSA, an "employer includes any person acting directly or indirectly in the interest of an employer in relation to an employee."  <u>Gray v. Powers</u>, 673 F.3d 352, 354 (5th Cir. 2012)(citing 29 U.S.C. § 203(d))(internal quotations omitted).  An economic reality test is used in the Fifth Circuit to determine whether an employer/employee relationship exists.  <u>Gray</u>, 673 F.3d at 354.  Courts consider the following factors in this analysis: "whether the alleged employer: (1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  <u>Id.</u> at 355.  If there is potentially more than one employer in a case, each separate individual or entity must satisfy this test to be considered an employer.  <u>Id.</u>

Plaintiffs argue that Defendant Eshtehardi is their employer

15

because he had hiring and firing authority, he acted as their supervisor, controlled their schedules and conditions of employment, controlled how much Plaintiffs were paid, and maintained Plaintiffs' records. Defendants argue that Defendant Eshtehardi should not be considered an employer of Plaintiffs under the FLSA because Plaintiffs are independent contractors, not employees.

From the record, Defendant Eshtehardi admits he had the power to hire and fire <u>employees</u>, supervise and control <u>employee</u> work schedules, determine the <u>employees</u>' rate and method of payment, and maintain employment records.[54]  However, those issues are contested as to Plaintiffs, whom Defendants contend are independent contractors.  Therefore, the court denies partial summary judgment on the issue of whether Defendant Eshtehardi is an employer of Plaintiffs.

## C.  Affirmative Defenses

Summary judgment can be used to adjudicate affirmative defenses.  See <u>Ford v. Hous. Indep. Sch. Dist.</u>, 97 F. Supp.3d 866, 871 (S.D. Tex. 2015).  A defendant has the ultimate burden of persuasion on affirmative defenses.  <u>Rushing v. Kan. City S. Ry. Co.</u>, 185 F.3d 496, 505 (5th Cir. 1999).  Therefore, with regard to

---

[54]     See Doc. 11, Def. Eshtehardi's Ans. ¶ 20 ("Defendant admits that he had, at all times relevant to this lawsuit, the authority to hire and fire employees, the authority to direct and supervise the work of employees, the authority to sign the business' checking accounts, including payroll accounts, and the authority to make decisions regarding employee compensation and capital expenditures, and admits that they were responsible for FLSA compliance.").

affirmative defenses at the summary judgment stage, a defendant "must adduce evidence to support each element of its defenses and demonstrate the lack of any genuine issue of material fact with regard thereto." Id.

In their answers, Defendants assert the affirmative defenses of laches, estoppel, waiver, ratification, release and/or consent, equitable estoppel, failure to state a claim, and lack of control. Plaintiffs argue in their motion for partial summary judgment that Defendants failed to plead these affirmative defenses, and, alternatively, the defenses Defendants assert are improper in an FLSA case.

### 1. Good Faith

According to Federal Rule of Civil Procedure 8(c), "[i]n responding to a pleading, a party must affirmatively state any avoidance or affirmative defense." Fed. R. Civ. P. 8(c)(1). If a defendant fails to timely plead an affirmative defense, it may be waived by the defendant. LSREF2 Baron, LLC v. Tauch, 751 F.3d 394, 398 (5th Cir. 2014).

The affirmative defense of good faith is available under the FLSA. See, e.g., Tran v. Thai, No. H-08-3650, 2010 WL 5232944, at *5-6 (S.D. Tex. Dec. 16, 2010). However, Defendants failed to plead the affirmative defense of good faith in their answers, and they did not oppose summary judgment on this issue. Therefore, there is no genuine issue of material fact as to this defense, and

17

Plaintiffs' motion for partial summary judgment should be granted with regard to the affirmative defense of good faith.

### 2. Failure to State a Claim

District courts have found that failure to state a claim is not an affirmative defense, but rather raises a defect in a plaintiff's complaint. <u>PNC Bank, Nat'l. Ass'n. v. SM & JH, LLC</u>, No 4:12-CV-597-JCH, 2012 WL 2905047, at *2 (E.D. Mo. July 6, 2012)("failure to state a claim is not a proper affirmative defense but, rather, asserts a defect in Plaintiff's prima facie case."); <u>Boldstar Tech., LLC v. Home Depot, Inc.</u>, 517 F. Supp.2d 1283, 1292 ("Failure to state a claim is a defect in the plaintiff's claim; it is not an additional set of facts that bars recovery notwithstanding the plaintiff's valid prima facie case. Therefore, it is not properly asserted as an affirmative defense."). The court finds these cases persuasive. Because failure to state a claim is an attack on Plaintiffs' pleadings and not an affirmative defense supported by facts raised by Defendants, the court grants Plaintiffs' motion for partial summary judgment with regard to Defendants' affirmative defense of failure to state a claim.

### 3. Lack of Control

Defendants assert the following "lack of control" affirmative defense in their answers, stating, "Plaintiff's claims are barred, in whole or in part, because any damage or injury, if any, that Plaintiff sustained is the result of her own acts or omissions or

the result of acts or omissions of other persons or entities over which Defendant had no control."[55]  Plaintiffs argue that Defendants did not provide them with fair notice for this affirmative defense because they did not properly plead this affirmative defense and that it is "unintelligible."  Defendants cite no authority and the court is aware of none stating that this is a valid affirmative defense in an FLSA action.   Therefore, Plaintiffs' motion for partial summary judgment is granted with regard to Defendants' "lack of control" affirmative defense.

**4.  Waiver, Estoppel, Ratification, Laches, Release, Consent**

A defendant "must plead an affirmative defense with enough specificity of factual particularity to give the plaintiff 'fair notice' of the defense that is being advanced."  Woodfield v. Bowman, 193 F.3d 354, 361 (5th Cir. 1999).  For some defenses such as contributory negligence, it is enough to merely name the defense to put the plaintiff on notice; however, for other broad defenses such as waiver and/or release, the Fifth Circuit has held that merely naming these defenses with no support is not enough to put a plaintiff on notice that a defendant intends to raise the defense. Id.  Additionally, "[i]t is unclear whether the equitable defenses of waiver, estoppel, unclean hands, and laches are available under the FLSA."  Tran, 2010 WL 5232944, at *8; see also

---

[55]    Doc. 10, Def. JK & HE's Ans. p. 11; Doc. 11, Def. Eshtehardi's Ans p. 11.

<u>Perez-Nunez v. North Broward Hosp. Dist.</u>, No. 08-61583-CIV, 2009 WL 723873, at *2 (S.D. Fla. March 13, 2009)("The doctrines of waiver, estoppel, and laches are generally not applicable to FLSA claims").

Even if defenses such as waiver or laches are valid under the FLSA, Defendants have failed to plead the defenses of laches, estoppel, waiver, ratification, release and/or consent, and equitable estoppel with any specificity.  Defendants merely state in their answer that Plaintiffs' claims are barred because of these affirmative defenses.  Additionally, Defendants fail to provide any legal or factual support in favor of any of these affirmative defenses in their response to Plaintiffs' motion for partial summary judgment.  Because these are broad defenses like those the Fifth Circuit discussed in <u>Woodfield</u>, the court finds that Defendants have not met their burden to raise a genuine issue of material fact on any of these defenses.  They have not pled with enough specificity to put Plaintiff on notice of the factual basis for these potential defenses.  Therefore, the court grants partial summary judgment for Plaintiffs on the affirmative defenses of laches, estoppel, waiver, ratification, release and/or consent, and equitable estoppel.

## IV.  Conclusion

Based on the foregoing, the court **GRANTS in PART and DENIES in part** Plaintiffs' motion for partial summary judgment.  The court grants Plaintiffs' motion as to Defendants' affirmative defenses,

but denies the motion as to the issues of whether Plaintiffs are independent contractors or employees, and whether Defendant Eshtehardi is Plaintiffs' employer.

**SIGNED** in Houston, Texas, this $\underline{14^{th}}$ day of October, 2016.

_____
U.S. MAGISTRATE JUDGE